UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

JOHN A. GILBO,

                              Petitioner,

        v.
                                                9:10-CV-0455
DALE ARTUS,                                     (NAM)

                              Respondent.

─────────────────────────────────────

APPEARANCES:                          OF COUNSEL:

JOHN A. GILBO
06-A-2960
Petitioner, pro se
Clinton Correctional Facility
P.O. Box 2002
Dannemora, NY 12929

HON. ERIC T. SCHNEIDERMAN          PAUL B. LYONS, ESQ.
New York State Attorney General        Ass't Attorney General
Attorney for Respondent
120 Broadway
New York, NY 10271

NORMAN A. MORDUE, United States District Judge

**DECISION and ORDER**

**I.      INTRODUCTION**

        Petitioner John A. Gilbo filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254, in which he challenges a 2006 judgment of conviction in St. Lawrence County

of second degree burglary (N.Y. PENAL LAW §140.25(2)) and two counts of petit larceny (N.Y.

PENAL LAW § 155.25).  Dkt. No. 1, Petition ("Pet.") at 2; Dkt. No. 10, Respondent's

Memorandum of Law ("R. Mem.") at 1-2.  Petitioner raises the following grounds for habeas

relief: (1) he was denied the right to proceed pro se at trial; (2) the evidence was insufficient;

(3) the verdict was against the weight of the evidence; (4) trial counsel was ineffective; (5) he was improperly sentenced as a persistent felony offender; and (6) the persistent felony offender hearing was unconstitutional. Pet. at 5-6 and attached typed sheet containing Grounds Five and Six. Respondent has filed an answer to the petition, a memorandum of law, and the relevant state court records. Dkt. No. 10, R. Mem.; Dkt. No. 11, Response; Dkt. No. 12, State Court Records. Petitioner has filed a Traverse. Dkt. No. 15, Traverse to Respondent's Opposition ("Traverse").

For the reasons that follow, the petition is denied and dismissed.

## II. BACKGROUND

### A. Facts

On the morning of May 13, 2005, petitioner's nephew, Michael Gilbo ("Gilbo"), drove to his grandmother's house to pick up a set of car ramps for his father. Transcript of Trial of John A. Gilbo ("Trial Tr.") at 217-18, 239-40. Gilbo's infant son was in the car. *Id.* at 217-18, 239-40. Petitioner, who lived at Gilbo's grandmother's house, went with Gilbo to deliver the car ramps. *Id.* at 220-22, 237-39. When they arrived, they shared drinks with Gilbo's father and took beer with them for their trip back to Gilbo's grandmother's house. *Id.* at 240-41. Gilbo drove, petitioner was in the front passenger seat, and Gilbo's son was in a car seat in the back of the car. *Id.* at 221-24.

During the trip, petitioner asked Gilbo to pull to the side of the road near a house belonging to Joseph White. Trial Tr. at 222-26, 242-43, 255-56; *Gilbo*, 52 A.D.3d at 953. White left his home earlier that day to run errands, and left his front door unlocked. *Id.* at 256-60, 263, 270-71. Gilbo stopped the car, and petitioner got out. Gilbo focused on his son,

2

who was crying. *Id.* at 223-26, 233, 243-44, 254. When petitioner returned to the car, he was carrying a stereo, which he placed in the back seat. *Id.* at 224, 226-27. Gilbo did not know petitioner intended to take the stereo when he stopped the car. *Id.* at 224, 227, 234-35, 244-45. White did not give anyone permission to enter his home, and when he returned home and noticed the stereo was missing, he called 911 to report the theft. *Id.* at 161-62, 259-63, 267, 271-72; *Gilbo*, 52 A.D.3d at 954.

After he returned to the car with the stereo, petitioner directed Gilbo to drive down a back road and pull into the driveway of another house. Trial Tr. at 227-28, 245-46, 251; *Gilbo*, 52 A.D.3d at 953. The owner of the house, Russell C. Sprague, saw the car pull into his driveway. *Id.* at 273-75, 281-82. Petitioner got out of the car and took a chainsaw from a pile of wood next to the driveway. *Id.* at 227-28, 233. Sprague saw petitioner standing next to the car, and yelled, "Hey." *Id.* at 276. Gilbo heard Sprague shout ["p]ut it back, it is mine." *Id.* at 228-29, 236, 247, 251. Petitioner put the chainsaw "between his legs" in the front passenger seat, and told Gilbo to "[t]ake off." *Id.* at 228-29, 236, 247, 251; 276, 284-85; *Gilbo*, 52 A.D.3d at 954. The only object near the car was Sprague's chainsaw. Trial Tr. at 274, 276-77. Sprague told his mother to call the police and report that men in a white car took the chainsaw. *Id.* at 274, 276-77. Sprague followed Gilbo and petitioner in his own car, but lost track of them. *Id.* at 277, 279, 283-84.

St. Lawrence County Sheriff's Deputy Shawn Wells responded to a radio dispatch that a chainsaw was stolen from a residence and that the thieves were driving down Old Dekalb Road in Canton in a white sedan. Trial Tr. at 287-88, 301, 313-14. Gilbo turned onto the campus of the State University of New York ("SUNY") at Canton, and Deputy Wells followed, ordering the car them to stop. *Id.* at 229-30, 247-49, 287-92, 297-98, 301-303, 313-16.

3

Deputy Wells asked petitioner where the chainsaw, that was resting against the front passenger seat where he was sitting, came from. *Id.* at 321, 331-32. Petitioner responded, "[w]hat chainsaw?" *Id.* at 321*; Gilbo*, 52 A.D.3d at 954. Petitioner was arrested, and as he was being walked to a patrol car, he stated that he did not know there was a chainsaw in the car. *Id.* at 321-22, 332. Petitioner was given his *Miranda* warnings, and Deputy Wells smelled alcohol on petitioner's breath. *Id.* at 322-25, 331-32. At some point, Gilbo explained to the police how the stereo and chainsaw got into his car. *Id.* at 232-34. Sprague arrived at the SUNY Canton campus and when he saw petitioner being walked to the patrol car, he shouted, "I think you guys got the guy that got my chainsaw." *Id.* at 231, 279-80. Sprague described and identified the chainsaw. *Id.* at 278, 280.

While he was sitting in a patrol car, petitioner told Deputy Wells that he knew about the chainsaw and a man named Fred Compo told petitioner he could pick it up. Trial Tr. at 326-28, 332-34. Petitioner claimed that Compo told him the chainsaw was "sitting beside the road" next to a farm about two and one-half miles past "Coakley's." *Id.* at 326-28, 332-34. Petitioner stated he was not given the address of the farm and could not explain how he located the farm. *Id.* at 327-28. Sprague told police, and later testified, that he did not know petitioner and did not give him permission to take the chainsaw, and that he did not recognize the name "Fred Compo." *Id.* at 277-78, 280-81.

During the investigation, Trooper Amanda Reif arrived and stated that a stereo was reported stolen from a residence. Trial Tr. at 325. Deputy Wells informed petitioner he would be charged with the chainsaw theft and with burglary relating to the stereo. *Id.* at 328. Joseph White eventually identified the stereo recovered by police. *Id.* at 262-63, 267.

During the ride to the police station, petitioner began repeating the story about Compo

4

and the chainsaw, and told Deputy Wells that he could "rob any place in Canton," including the police station, and that the police "could do nothing about it." Trial Tr. at 329-30. He also told Deputy Wells that he wanted to be "completely honest." *Id.* Deputy Wells asked him where the stereo came from, and petitioner responded "[o]h, that came from the house." *Id.* at 330. When Deputy Wells asked him to elaborate, petitioner stopped speaking. *Id.*; *Gilbo*, 52 A.D.3d at 953-54.

### B.    State court proceedings

On June 20, 2005, petitioner was indicted by a St. Lawrence County grand jury on one county of second degree burglary and two counts of petit larceny. Dkt. No. 12-3, Appendix at 4-5.[1] Michael Gilbo was not charged.

On October 11, 2005, petitioner sent a letter to the trial court in which he complained about the amount of bail set, and requested both a change of venue and substitution of counsel. Dkt. No. 12-3, Appendix at 8-9. On October 17, 2005, the court sent petitioner a letter informing him that he should discuss his concerns with counsel, and that he could then make a formal motion to change counsel. *Id.* at 10. The court further advised that it lacked jurisdiction to entertain petitioner's request for a change of venue. *Id.*

On October 26, 2005, petitioner's counsel, a member of the Conflict Defender of St. Lawrence County, moved to withdraw from the case. Dkt. No. 12-3, Appendix, Affirmation of William John Galvin, Esq. in Support of Order to Show Cause, at 12. Counsel explained that he met with petitioner at the St. Lawrence County jail, where petitioner informed counsel that he would not work with him or with any other attorney from

---

[1] The cited page numbers of the Appendix refer to the handwritten numbers on the top center of each page.

the Conflict Defender's Office. *Id.* at 13. Counsel further explained that petitioner was belligerent with his staff in the past and that, at one point, petitioner was forbidden to meet with any of the attorneys at their office, meeting instead at alternate locations. *Id.* at 13. Counsel stated that petitioner "displayed a distrust of" the Conflict Defender's Office, and his refusal to communicate with counsel, and his lack of respect for counsel and his staff, "frustrated" counsel's "ability to zealously represent" petitioner. *Id.* Finally, counsel stated that he believed the "attorney-client relationship has been irreparably damaged" and that he could not "effectively represent" petitioner. *Id.* at 14.

On October 30, 2005, a hearing was held on counsel's motion. Dkt. No. 12-1, Transcript of Hearing on Order to Show Cause ("H."). Petitioner confirmed that he did not have the funds to retain private counsel. H. at 2. The court summarized the content of counsel's affidavit, and told petitioner that he could not obtain a new attorney by being "belligerent to the one you have." *Id.* The court also told petitioner that if his actions caused counsel to be removed, his relief was to "handle the matters" himself. The court asked petitioner if he agreed with counsel's affirmation, and if he was "prepared to go forward to represent" himself on a Class C felony. *Id.* Petitioner told the court he was ready for trial and to act as his own counsel. *Id.* When the court asked petitioner if he wanted the court to relieve counsel and permit petitioner to "go forward as his own counsel," without assigning new counsel, petitioner answered, "Yeah. I would rather have none." *Id.*

After petitioner stated his name and date of birth, the court asked him if he ever "received treatment for a mental or physical condition which affect[ed] [his] abilities to understand." H. at 4. Petitioner answered that he had been hospitalized before but did not know why. *Id.* When asked if he had enough time to think about representing himself,

petitioner answered, "I don't need a lawyer." *Id.* The court elicited from petitioner that he completed the eighth grade and previously worked in "scrap metal." *Id.* at 4-5. Petitioner told the court he participated in three previous jury trials through jury selection in St. Lawrence County, and accurately stated the charges against him. *Id.* at 5.

When the court asked what the next step in the proceedings would be if counsel was relieved, petitioner responded, "Two trials scheduled for next month in Morristown Court" on misdemeanor charges." H. at 5. The court repeated the question, asking petitioner at what stage the proceedings for the burglary charge were, and petitioner responded, "I got beat out of my preliminary hearing." *Id.* at 6. Petitioner indicated the case was ready for trial, and that he intended to call witnesses at trial, but that he was not familiar with court procedures to get subpoenas for the witnesses. *Id.* The court asked petitioner if he understood that "many people who represent themselves are not successful at trial," and he responded, "I don't need nobody." *Id.* at 6-7. The court explained that if petitioner represented himself, he would be "held to the same legal standards" as if he were an attorney, and if the "district attorney makes objections, the Court will rule on the objections and will not assist" him. *Id.* at 7. Petitioner responded, "I could do that from my cell, right? I don't need to come over here, right?" *Id.* The court responded that petitioner would be brought to court, and asked him if he intended to absent himself from the trial. *Id.* Petitioner responded that if he was going to get "railroaded," he "might as well get railroaded from [his] cell." *Id.* at 7-8.

The court then asked petitioner if he understood criminal law was complex, and pointed out that counsel was previously able to obtain a not guilty verdict on an unrelated case. H. at 8. Petitioner responded, "I think I did a lot of work on that." *Id.* When the court disagreed, petitioner stated, "Well, I can't talk when I want to talk, right, during trial. I'm not

like you guys here, you know. I'm not a bigwig. I can't talk like you." *Id.* at 8. The court asked petitioner if his understanding "of the role of attorneys is that they are bigwigs, not that it's their job to do the talking [.]" *Id.* Petitioner replied, "What do you think? You made bail at 250 thousand dollars. What do you think? While someone else is saying something? You can do that, right?" *Id.* When the court asked petitioner if he believed he was capable of representing himself, he replied, "I don't even want to be in St. Lawrence County for this trial," and requested a change of venue. *Id.* at 8-9. The trial court asked him if he still wanted to waive his right to be represented by an attorney. *Id.* Petitioner replied, "I waive my right to be represented by him and anybody in his office." *Id.*

The prosecutor then told the court he intended to seek persistent felony offender status for purposes of sentencing, which would carry a minimum sentence of fifteen years in prison. H. at 9. The court asked petitioner if he still wanted to proceed without counsel, and petitioner responded, "I don't care. Do what you have got to do." *Id.* The court reserved its decision. *Id.*

On November 4, 2005, the court denied counsel's motion to withdraw and petitioner's motion to proceed pro se, finding that "good cause ha[d] not been shown." Dkt. No. 12-3, Appendix, Order, Rogers, J. at 25. The court explained that during the hearing, petitioner "refused to discuss the trial process" and instead became "angry and belligerent, saying that he would refuse to participate, and that the whole proceeding was a sham, and that 'you all will just do whatever you want to do.'" *Id.* at 24. The court found that counsel was necessary because although petitioner had "experience with the legal system, he lack[ed] sufficient education, insight and understanding as to how it works, and further lack[ed] judgment about how best to mount a reasonable defense." *Id.*

8

The court further explained that although it considered "the possibility of so-called 'hybrid' representation, whereby [petitioner] has an attorney but may also proceed pro se," and "standby counsel," in which counsel "is merely silent in the background" unless petitioner requested assistance, neither option was a right. Dkt. No. 12-3, Appendix, Order, Rogers, J. at 24-25. Rather, either option was "discretionary with the court based on the facts of a particular case." *Id.* at 25. The court rejected both options, finding that "the potential risks to [petitioner] of going forward without active counsel are so great as to outweigh the importance of the obvious and real communication difficulties between attorney and client." *Id.* at 25.

On November 7, 2005, counsel requested that the court order a psychiatric evaluation of petitioner. Dkt. No. 12-5, Exhibit B, The Defendant/Appellant's Brief, at 8-9. The trial court did so, and petitioner was found to be competent to understand the proceedings and to assist in his defense. *Id.*; Dkt. No. 12-3, Appendix at 27-32.

On January 20, 2006, a hearing was held to determine the admissibility at trial of petitioner's statement to police. On January 31, 2006 the trial court denied petitioner's motion to suppress his statements. Dkt. No. 12-3, Appendix, Order, Rogers, J. at 35-37.

On February 8, 2006, a jury convicted petitioner of all charges. Trial Tr. at 414-17. After the verdict but before sentencing, petitioner wrote a series of letters to the public defender's office, the trial court, the Appellate Division and others in which he expressed his dissatisfaction with trial counsel for allegedly telling inmates and staff at the county jail, before his trial, that petitioner was guilty, and his dissatisfaction with the amount of bail set in his case. Dkt. No. 12-4, Appendix at 209-234. During a court appearance on April 27, 2006, the trial court acknowledged receipt of petitioner's letters and his request for a hearing on the

alleged misconduct of counsel. Dkt. No. 12-2, Transcript, Apr. 27, 2006 at 3. The court

declined to hold a hearing, noting that sentencing had not yet taken place, and that there was

no proper motion pending before the court to set aside the verdict. *Id.* at 3-4. It also

indicated petitioner could bring his ineffective assistance claims on direct appeal, or in a

motion brought pursuant to Criminal Procedure Law ("CPL") § 440.10. *Id.* at 4.

On May 23, 2006, a hearing was held to determine whether petitioner should be

sentenced as a persistent felony offender. Dkt. No. 12-2, Transcript of Sentencing

Proceedings ("Sent. Tr."), May 23, 2006. The prosecutor presented testimony of five

witnesses and submitted several exhibits showing petitioner's various prior convictions. *Id.* at

5-35. Petitioner testified on his own behalf. *Id.* at 37-46. At the close of the hearing, the trial

court found petitioner was a persistent felony offender and sentenced him to serve an

aggregate term of fifteen years to life in prison. *Id.* at 50-54.

Petitioner timely appealed his conviction to the Appellate Division, Third Department,

and raised the following grounds: (1) he was deprived of the right to proceed pro se; (2) the

evidence was insufficient; (3) the verdict was contrary to the weight of the evidence; (4)

counsel was ineffective; (5) he was improperly sentenced as a persistent felony offender; and

(6) the persistent felony offender hearing was unconstitutional. Dkt. No. 12-5, Exhibit B at 40-

70. The Appellate Division affirmed. *Gilbo*, 52 A.D.3d 952 (3d Dep't. 2008). The New York

Court of Appeals denied leave to appeal on September 18, 2008. *Gilbo*, 11 N.Y.3d 788

(2008).

On July 24, 2009, petitioner moved to vacate his conviction pursuant to CPL § 440.10.

Dkt. No. 12-11, Ex. H. In his motion, petitioner argued that trial counsel was ineffective

because he failed to obtain the grand jury transcript after the trial court ordered that counsel

be provided with the transcript, and that counsel did not make a record after the trial court failed to disclose and respond to the contents of a jury note. *Id.*, Affidavit in support of section 440 motion, at 3-4, 9-17. He also argued that counsel should not have been required to represent petitioner after counsel requested that he be removed. *Id.* at 17. The prosecutor opposed the motion. Dkt. No. 12-12, Ex. I.

On September 28, 2009, the trial court denied petitioner's section 440 motion, finding that petitioner's claims were procedurally barred because he could have raised them on direct appeal but did not. Dkt. No. 12-13, Ex. J, Order, Rogers, J. at 1-2 (citing CPL § 440.10(2)(a) and (c)). The court alternatively found that the claims lacked merit. *Id.* On January 6, 2010, the Appellate Division denied leave to appeal. Dkt. No. 12-16, Ex. M.

This action followed.

## III. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398, 1400 (2011) (citing 28 U.S.C. §§2254(d)(1), (2)); *Premo v. Moore*, __ U.S. __, 131 S. Ct. 733, 739 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). The AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of

the doubt." *Felkner v. Jackson*, __ U.S. __, 131 S. Ct. 1305, 1307 (2011) (per curiam) (quoting *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks omitted)). Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with '"clear and convincing evidence."' *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Id.* at 473.

## B. Denial of the right to proceed pro se

Petitioner argues in Ground One of his petition that he was denied the right to proceed pro se at trial. Pet. at 5, Traverse at 2. He states that the trial court did not conduct a complete inquiry and place on the record its reasons for denying petitioner's request. Traverse at 2.

The Sixth Amendment of the United States Constitution grants a criminal defendant the right to represent himself in proceedings against him, but that right is not absolute. *Indiana v. Edwards*, 554 U.S. 164, 175 (2008); *Faretta v. California*, 422 U.S. 806, 819 (1975). Before a defendant is permitted to proceed pro se, he must be "warned specifically of the hazards ahead," including the "dangers and disadvantages of self-representation[.]" *Iowa v. Tovar*, 541 U.S. 77, 88-89 (2004) (quoting *Faretta*, 422 U.S. at 835); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1937). A waiver of counsel must be knowingly and intelligently made, and the defendant must be "able and willing to abide by rules of procedure and courtroom protocol." *Micolo v. New York*, No. 2:07-CV-0449, 2010 WL 3310721 at *8 (E.D.N.Y. Aug.

18, 2010) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984)).[2]  Whether there has been

an intelligent waiver of counsel is fact-specific and depends upon the circumstances of the

case, "including the defendant's education or sophistication, the complex or easily grasped

nature of the charge, and the stage of the proceeding." *Tovar*, 541 U.S. at 88 (citing

*Johnson*, 304 U.S. at 464); *see United States v. Barnes*, __ F.3d __, 2012 WL 3799659 at *9

(2d Cir. Sept. 4, 2012) (quoting *Johnson*, 304 U.S. at 464).  Courts should also consider

whether the defendant was competent to represent himself at trial and whether the request to

do so was "genuine." *Barnes*, 2012 WL 3799659 at *9 (citing *Edwards*, 554 U.S. at 170, 177-

78 and *Faretta*, 422 U.S. at 817).

      Additionally, the right to proceed pro se is not "a license to abuse the dignity of the

courtroom." *Clark v. Perez*, 510 F.3d 382, 395 (2d Cir. 2008) (quoting *Faretta*, 422 U.S. at

834 n. 46); *People v McIntyre*, 36 N.Y.2d 10, 18 (1974) (a defendant may forfeit the right to

self-representation "by engaging in disruptive or obstrep[e]rous conduct . . . calculated to

undermine, upset or unreasonably delay the progress of the trial") (citations omitted).  A

judge may "use willingness and ability to abide by courtroom protocol as prerequisites for

accepting a defendant's waiver of his right to counsel." *Davis v. Grant*, 532 F.3d 132, 142,

149 (2d Cir. 2008); *see McIntyre*, 36 N.Y.2d at 17 ("[a] defendant in a criminal case may

invoke the right to defend pro se provided: (1) the request is unequivocal and timely asserted,

(2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the

defendant has not engaged in conduct which would prevent the fair and orderly exposition of

the issues").

---

[2]  There is no constitutional right to hybrid representation.  *Wiggins*, 465 U.S. at 183.

13

In this case, the Appellate Division rejected petitioner's claims, finding that the trial court made "appropriate inquiries regarding [petitioner's] education, employment history, experience with the legal system and understanding of the risks inherent in proceeding pro se." *Gilbo*, 52 A.D.3d at 954 (citing *People v Arroyo*, 98 N.Y.2d 101, 104 (2002)); *see* H. at 3-9. That finding, supported by the record, was not contrary to clearly established Supreme Court precedent. *Tovar*, 541 U.S. at 88 ("We have not, . . . prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel.").

The same is true of the Appellate Division's conclusion that the trial court properly denied petitioner's motion to proceed pro se based on his "unprovoked, disruptive conduct and his refusal to meaningfully participate in his trial if permitted to proceed pro se." *Gilbo,* 52 A.D.3d at 955. As the court noted, during the hearing, petitioner "became belligerent and criticized the court over a prior ruling regarding bail, demanded a change of venue and stated that he was 'going to get railroaded, [and he] might as well get railroaded from [his] cell.'" *Id.* at 954-55; H. at 4-9. *See Faretta*, 422 U.S. at 834 n. 46 (stating that a court may terminate a defendant's right to proceed pro se if he "deliberately engages in serious and obstructionist misconduct."). Based upon petitioner's answers to the trial court's questions, it is not at all clear that his request to proceed pro se was knowing or intelligent, that he was competent to

represent himself,[3] or that his request to do so was genuine.[4] *Edwards*, 554 U.S. at 170;

*Johnson*, 304 U.S. at 464; *see also Barnes*, 2012 WL 3799659 at *9 (citing *Faretta*, 422 U.S.

at 817 (a defendant has a "basic right to defend himself if he truly wants to do so.")); *Jones v.*

*Murphy*, No. 3:10-CV-0049, 2010 WL 3829129 at *11 (D. Conn. Sept. 21, 2010) ("the state

court reasonably applied Supreme Court law in assessing Jones [sic] disruptive behavior.

The conclusion, based on that analysis, that Jones also had forfeited his right to

self-representation, is not an unreasonable application of Supreme Court law."), *aff'd* __ F.3d

__, 2012 WL 3764937 (2d Cir. Aug. 29, 2012).

In sum, based upon the record, this court cannot say that the Appellate Division's

decision, entitled to AEDPA deference, was contrary to or an unreasonable application of,

clearly established Supreme Court precedent. Ground One of the petition is denied and

dismissed.

## C.    Sufficiency of the evidence

Petitioner argues in Ground Two of his petition that the evidence was insufficient to

support his conviction because Gilbo's testimony was not sufficiently corroborated. Pet at 6.

---

[3] It is worth noting that in response to the trial court's inquiry about whether he ever received treatment for a mental or physical condition that might affect his ability to understand the proceedings, petitioner responded that he had been "in the hospital" but did not know why. H. at 4; *see Edwards*, 554 U.S. at 177-78 ("We . . . conclude that the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so" and to "insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.").

[4] Petitioner made two statements near the end of the colloquy that were not referenced by the Appellate Division, but that bear noting. First, in response to the trial court's question on whether he wanted to waive his right to counsel, petitioner stated, "I waive my right to be represented by him [counsel] and anybody in his office." H. at 9. Additionally, after the prosecutor stated his intent to seek persistent felony offender status, the court asked petitioner if, in light of that information, he still wanted to proceed pro se. H. at 9. Petitioner responded, "I don't care. Do what you have got to do." *Id.* It appears to be unclear, based on these statements, that petitioner genuinely wanted to represent himself. *Faretta*, 422 U.S. at 817.

He raised this argument on direct appeal, and cited to CPL § 60.22 (1) for the proposition that the prosecution was required to provide corroboration for Gilbo's testimony and failed to do so.[5] Dkt. No. 12-5, Exhibit B at 41-44. He further argued that there was no other evidence petitioner entered the White house and took the stereo, and that his fingerprints were not recovered. *Id.*[6]

The Appellate Division first found that, "assuming that the jury concluded that Gilbo was an accomplice, the corroboration requirement was met." *Gilbo*, 52 A.D.3d at 953. Specifically, the court ruled that "the testimony of the property owners, as well as that of the police regarding defendant's statement and conduct at the time that Gilbo's vehicle was stopped, was adequate 'to satisfy the minimal requirements' of CPL 60.22." *Id.* at 954. The court further ruled that viewing Gilbo's testimony and the other evidence in a light most favorable to the People, "there is [a] valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged." *Id.* (quoting *People v Bleakley*, 69 N.Y.2d 490, 495 (1987) (citation omitted)). That decision was not contrary to, or an unreasonable application of,

---

[5] Section 60.22(1) states "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." N.Y. CRIM. PROC. § 60.22(1).

[6] Petitioner also claimed that he was intoxicated and lacked the capacity to form the requisite intent, that the jury should have been charged on intoxication, and that Gilbo was an accomplice as a matter of law. Dkt. No. 12-5, Exhibit B at 44-46. He does not appear to be raising these claims in his federal petition. Pet. at 5-6, Traverse at 1-3. If he were raising these claims, they would be procedurally defaulted because the Appellate Division found them to be unpreserved and declined to review them in the interest of justice. *Gilbo*, 52 A.D.3d at 954. Since the court rejected the claims based upon an adequate and independent state procedural ground of preservation, these claims would be barred from habeas review absent a showing of cause for the default and resulting prejudice, or that the failure to review the claims would result in a fundamental miscarriage of justice. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Harris v. Reed*, 489 U.S. 255, 264 (1989); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner has not made the required showing.

clearly established Supreme Court precedent.

Claims that are based solely on state law grounds are generally not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citation omitted). *See Lewis v. Jeffers*, 497 U.S. 764, 765 (1990) (federal habeas corpus relief "does not lie for errors of state law."). To the extent that petitioner's current argument is that Gilbo's testimony was not corroborated as required by CPL § 60.22, that claim is not cognizable on federal habeas review. *Nylander v. Smith*, No. 1:07-CV-0457, 2010 WL 1292297 at *5 (E.D.N.Y. Mar. 30, 2010) ("Many district courts have rejected habeas claims based exclusively on New York's accomplice-corroboration rule on the ground that such claims are not cognizable on habeas review.") (collecting cases); *Arrington v. Bradt*, No. 9:08-CV-0070 (TJM), 2009 WL 909841 at *9 (N.D.N.Y. Apr. 2, 2009) (same); *Huntley v. Superintendent*, No. 9:00-CV-0191 (DNH/GHL), 2007 WL 319846 at * 17 (N.D.N.Y. Jan. 30, 2007) ("petitioner's claim that the accomplice testimony of Marcano and Rodriguez was not sufficiently corroborated is based solely on the accomplice corroboration requirement of New York state law, *see* N.Y. CPL § 60.22, does not constitute a claim in violation of a federal constitutional right, and therefore also is not cognizable on federal habeas corpus review."); *Dawson v. Donnelly*, 111 F. Supp. 2d 239, 251 (W.D.N.Y. 2000) (accomplice corroboration rule "is a state law and not a Constitutional requirement, and may not be raised in a Federal habeas petition.").

Additionally, under federal law, "there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them." *Caminetti v. United States*, 242 U.S. 470, 495 (1917). Federal defendants may therefore be convicted upon the uncorroborated testimony of an accomplice, and that uncorroborated testimony is relevant to the weight, and not the sufficiency, of the evidence. *Crespo v. Fischer*, No. 1:06-CV-2577, 2006 WL 3486805

17

at *5 (S.D.N.Y. Nov. 27, 2006) (citing *United States v. Gordon*, 433 F.2d 313, 314 (2d Cir. 1970)); *see United States v. Taylor*, No. 10-4637-cr, 2012 WL 1216389 at *1 (2d Cir. Apr. 12, 2012) ("even if Taylor's testimony was uncorroborated, we could not undo the verdict for that fact alone" . . . Whether to credit Taylor . . . was a question for the jury alone.").

The Appellate Division's further conclusion that the proof was sufficient was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged. *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original); *see Cavazos v. Smith*, __ U.S. __, 132 S. Ct. 2, 3-4 (2011) (per curiam) (Jackson "makes clear that it is the responsibility of the jury - not the court- to decide what conclusions should be drawn from evidence admitted at trial."). A habeas petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324. "When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)). The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson*, 443 U.S. at 319.

Under New York law, the prosecutor had to prove that petitioner knowingly entered or remained unlawfully inside White's house, without license or privilege to be there, and with the intent to commit a crime inside. N.Y. PENAL LAW §§ 140.00 (5);140.25(2). The prosecutor also had to prove that petitioner stole property from White and Sprague. N.Y. PENAL LAW § 155.25. As the Appellate Division found, the evidence, including Gilbo's testimony, petitioner's statements to police, and the testimony of the police witnesses and property owners, established that petitioner entered White's home, that he was not authorized or privileged to do so, and that he took a stereo from inside. The evidence also established that petitioner took Sprague's chainsaw from his driveway without permission. Trial Tr. at 161-62, 222-27, 242-43, 259-63, 267-82, 321-32. Although petitioner pointed out reasons why the jury should not believe Gilbo, the jury was free to credit his testimony, evaluate it and the rest of the proof presented, and to resolve any conflicts in the proof in favor of the People. *Cavazos*, 132 S. Ct. at 6; *see Taylor*, 2012 WL 1216389 at *1 (since the testimony of a co-conspirator was not "incredible on its face," and was corroborated, the evidence was sufficient; whether to credit that testimony was a "question for the jury alone.") (citing *United States v. Parker*, 903 F.3d 91, 97 (2d Cir. 1990)); *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979) ("[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." ); *Roman v. Filion*, No. 1:04-CV-8022, 2005 WL 1383167 at *32 (S.D.N.Y. 2005) (jury entitled to accept eyewitness testimony even though it contained inconsistencies). This court may not reassess the jury's finding of credibility. *Taylor*, 2012 WL 1216389 at *1; *Roman*, 2005 WL 1383167 at *32.

In sum, a rational jury could have found "the essential elements of the crime[s] beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Cavazos*, 132 S. Ct. at 7-8. The

Appellate Division did not act contrary to, or unreasonably apply, Supreme Court precedent in rejecting petitioner's sufficiency claim. Ground Two of the petition is denied and dismissed.

### D. Weight of the evidence

Petitioner argues in Ground Three of his petition that his conviction was contrary to the weight of the evidence. Pet. at 6. "Weight of the evidence" claims derive from CPL § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. CRIM. PROC. LAW § 470.15(5); *People v. Bleakley*, 69 N.Y.2d 490 (1987). Since weight claims are grounded in the state criminal procedure statute, they are not cognizable on habeas review. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Lewis*, 497 U.S. at 780 (habeas corpus review not available to remedy alleged error of state law); *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (stating that "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments of both of these issues."); *Cummings v. Burge*, 581 F. Supp. 2d 436, 451-52 (W.D.N.Y. 2008) ("Since a 'weight of the evidence claim' is purely a matter of state law, it is not cognizable on habeas review.").

Accordingly, Ground Three of the petition is dismissed.

### E. Ineffective assistance of counsel

Petitioner argues in Ground Four of his petition that trial counsel was ineffective because he: (1) did not want to represent petitioner, and asked the court to remove him from petitioner's case; (2) failed to properly cross-examine Gilbo at trial; and (3) failed to explore

during the *Huntley* hearing whether police questioning of petitioner outside the presence of counsel was proper. Pet. at 6; Traverse at 1-2 (the direct appeal claims). Petitioner also argues that counsel was ineffective because he did not (1) obtain the grand jury transcript after the court ordered its disclosure; and (2) make a record when the trial court allegedly failed to disclose or respond to the contents of a jury note (the section 440.10 claims). Finally, he asserts that counsel should have been removed and "replaced with competent counsel." Traverse at 2.

### 1. The section 440 claims

Federal habeas review of a petitioner's claims is prohibited if a state court rested its judgment on an "adequate and independent state ground." *Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir.1999). "[T]his rule applies whether the state law ground is substantive or procedural." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citation omitted). Thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of federal claims in a habeas petition. *Harris*, 489 U.S. at 264 & n. 10 (1989).

Here, petitioner raised his ineffectiveness claims relating to the grand jury transcript and the jury note in his section 440 motion. Dkt. No. 12-8, Exhibit H. The trial court rejected them under CPL §440.10(2)(c), which provides that a court must deny a motion to vacate a judgment if sufficient facts appear on the record to have permitted adequate review of the claim on direct appeal, but the defendant unjustifiably failed to raise the claim on direct appeal. Dkt. No. 12-10, Ex. J at 1-2. The state court's rejection of petitioner's claims pursuant to CPL § 440.10(2)(c) rests upon an independent and adequate state ground and federal review of these claims is thus procedurally defaulted. *Clark,* 510 F.3d at 393; *Sweet*

*v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003); *Aparicio v. Artuz*, 269 F.3d 78, 92-93 (2d Cir. 2001).  That is true even though the trial court also rejected the claims on other grounds in the alternative.  *See Harris,* 489 U.S. at 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

These claims may only be reviewed if petitioner demonstrates (1) good cause for the default and actual resulting prejudice; or (2) that the denial of habeas relief would leave unremedied a "fundamental miscarriage of justice," i.e., that he is actually innocent.  *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Sweet*, 353 F.3d at 141.  To establish cause, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule.  *Maples v. Thomas*, __U.S.__, 132 S. Ct. 912, 922 (2012); *Coleman,* 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Petitioner has not alleged or shown cause to excuse his procedural default and, therefore, the court need not decide whether he suffered actual prejudice.  *See Murray,* 477 U.S. at 496 (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) (same).  Petitioner has not produced any new evidence that he is actually innocent.  Although he claims that the evidence was insufficient to support his convictions, that argument is not new and is based on facts presented to, and rejected by, the Appellate Division.  Dkt. No. 12-5, Exhibit B; *Gilbo*, 52 A.D.3d at 953-54.  Since petitioner has not produced any new evidence that he is actually innocent, there is no basis to conclude that the failure to consider the merits of his ineffectiveness claims based on the grand jury transcript and the jury note would result in a fundamental miscarriage of justice.  *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  Therefore, petitioner's

section 440 claims of ineffective assistance are procedurally defaulted and dismissed.

### 2. the direct appeal claims

Petitioner's remaining claims, that counsel was ineffective based upon his desire not to represent petitioner, his cross-examination of Gilbo and his failure during the suppression hearing to explore whether petitioner was improperly questioned by police outside the presence of counsel, were raised on direct appeal. Dkt. No. 12-5, Exhibit B at 51-58. The Appellate Division rejected them, finding that petitioner did not demonstrate "that his attorney [in any way] failed to provide meaningful representation[.]" *Gilbo*, 52 A.D.3d at 955 (quoting *People v. Caban*, 5 N.Y.3d 143, 152 (2005) and citing *People v. Baldi*, 54 N.Y.2d 137, 146-147 (1981)). That decision, entitled to AEDPA deference, was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the results of the proceedings would have been different, and as a result, petitioner suffered prejudice. *Premo*, 131 S. Ct. at 739; *Strickland v. Washington*, 466 U.S. 668, 694 (1984). A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Even if a petitioner can establish that counsel was deficient, he still must show that he suffered prejudice. *Id.* at 693-94.

Meeting this burden is "never an easy task . . . [and] establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Premo*,

131 S. Ct. at 739-40 (citations and internal quotation marks omitted).  When reviewing a state court's decision under section 2254, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold."  Knowles v. Mirzayance, --- U.S. ----, 129 S. Ct. 1411, 1420 (2009) (internal quotation marks omitted). Federal habeas courts "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)" because "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable."  *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).  Rather, "the question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard."  *Id.*  Finally, when assessing prejudice, habeas courts "must consider the totality of the evidence before the judge or jury." *Berghuis v. Thompkins*, __ U.S. __, 130 S. Ct. 2250, 2264 (2010) (quoting *Strickland*, 466 U.S. at 695).

In this case, the Appellate Division did not act contrary to, or unreasonably apply, clearly established Supreme Court precedent when affirming the trial court's finding that there was no good cause to remove counsel, or that counsel provided meaningful representation.[7] The Sixth Amendment guarantees criminal defendants the right to competent counsel, not to a "meaningful relationship" with counsel.  *Morris v. Slappy*, 461 U.S. 1, 14 (1983).  A trial court has discretion to grant or deny a motion for substitution of counsel based upon the timing of the motion and its effect on the progress of the case, the extent to which the defendant's conduct caused or contributed to the problem, and whether the dispute between the defendant and counsel was "so great that it had resulted in total lack of communication

---

[7]  *See Rosario v. Ercole*, 601 F.3d 118, 126 (2d Cir. 2010) (because "the New York state standard for ineffective assistance of counsel is not contrary to *Strickland*," petitioners must establish that the state court unreasonably applied *Strickland* in order to obtain habeas relief).

preventing an adequate defense." *United States v. John Doe #1,* 272 F.3d 116, 123 (2d Cir. 2001) (quoting *United States v. Simeonov*, 252 F.3d 238, 241 (2d Cir. 2001)); *Simms v. LaClair*, 769 F. Supp. 2d 116, 125 (W.D.N.Y. 2011).

The trial court inquired into the circumstances surrounding counsel's motion, H. at 2-3, and correctly pointed out that petitioner could not obtain new counsel by being "belligerent" to existing counsel. Dkt. No. 12-1, H. at 2;[8] *Morris,* 461 U.S. at 13; *John Doe #1*, 272 F.3d at 125. Even if the trial court conducted an inadequate inquiry, that error would be harmless because the record does not support a finding that the difficulties between petitioner and counsel prevented counsel from mounting an adequate, competent defense. *Norde v. Keane*, 294 F.3d 401, 412 (2d Cir. 2002); *John Doe #1*, 272 F.3d at 123; see *Lopez v. Graham*, 1:10-CV-0468, 2012 WL 1865502 at *10 (E.D.N.Y. May 22, 2012) ("the record does not suggest that any alleged problems between Lopez and his counsel prior to trial persisted during the trial itself or impaired counsel's effectiveness at trial.").

Counsel's strategy was to minimize petitioner's involvement in the crime and to shift the blame to Gilbo. Trial Tr. at 213-14, 349-56. He vigorously cross-examined witnesses, including Gilbo, and made appropriate motions and objections. *Id.* at 236-49, 253-54, 268-72, 281-84, 297-99, 308-13, 330-36. Counsel moved to suppress petitioner's statements to police, and moved to dismiss the burglary charge at the close of proof, making specific arguments that preserved the claim for direct appeal. Suppression Transcript; Trial Tr. at 339. He successfully argued that the jury should be instructed on accomplice liability and corroboration. *Id.* at 343-46. In his closing argument, counsel again argued that Gilbo

---

[8] The "right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).

committed the crimes, and that was why Gilbo had a "selective and a false" memory about details surrounding the day of the crimes. *Id.* at 349-52. He further argued that petitioner's statements to police were not actually admissions. For example, counsel argued that petitioner's statement that the stereo "came from the house" was not the same as an admission to having taken the stereo, and that his statements he could commit burglaries and the police could not stop him were influenced by alcohol and constituted bragging. *Id.* at 354-56. Finally, counsel objected to petitioner being adjudicated a persistent felony offender, and consistently objected to the admission of evidence and testimony during the sentencing hearing. Sent. H. at 8, 9-11, 13, 17-18, 22, 26, 29, 46. The fact that counsel's strategy did not result in acquittal, or in a lesser sentence, does not mean he was ineffective. *See Lopez v. Greiner*, 323 F. Supp. 2d 456, 480 (S.D.N.Y. 2004) (trial counsel not ineffective where "the record as a whole" demonstrates that counsel "pursued a coherent, if ultimately unsuccessful, defense strategy"), *aff'd.* 159 F. App'x. 320 (2d Cir. 2005).

Petitioner's claim that trial counsel was ineffective for not properly cross-examining Gilbo is similarly without merit. The manner in which counsel conducted cross-examination is a tactical decision and will not be second-guessed by a reviewing court unless there is no strategic justification for counsel's chosen course of action. *See United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987) ("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are similarly strategic in nature."); *Mathurin v. United States*, 1:01-CV-1374, 2007 WL 2589450 at *12 (S.D.N.Y. Sept. 5, 2007) ("[i]t is well established that the decision to engage in cross-examination and, if so, to what extent and in what manner, are tactical decisions that should not be second-guessed by the courts") (citing *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002)); *Stallings v. Woods*, No. 1:04-CV-4714,

2006 WL 842380 at *18 (E.D.N.Y. Mar. 27, 2006) (decisions relating to the scope and manner of cross-examination "strategic in nature and generally will not support an ineffective assistance claim.") (quoting *Dunham*, 313 F.3d at 732). Here, the Appellate Division's rejection of this claim is supported by the record, which shows that counsel cross-examined Gilbo, pointing out inconsistencies and calling into question his memory. Trial Tr. at 236-49, 253-54. In light of the evidence, petitioner cannot establish that had counsel conducted a different cross-examination, the outcome of the case would have been different.

Petitioner's next claim, that counsel did not properly explore during the suppression hearing whether police questioned petitioner while knowing he was represented by counsel on other charges, is refuted by the record and is equally meritless. During the suppression hearing, counsel questioned Deputy Wells about whether, and when, he was aware that petitioner was facing burglary charges for an unrelated incident at the time of his stop. Dkt. No. 12-1, Suppression Tr. at 22-23. Deputy Wells testified that he did not know at the time of the stop that petitioner had pending charges, and that although he later learned that information by speaking to other officers, he did not recall who informed him of the charges, or when or where that conversation took place. *Id.* at 22. On redirect examination, Deputy Wells testified that he learned of petitioner's other charges "sometime after this arrest," and after he arrived at the police station with petitioner. *Id.* at 42-43. The record shows that this issue was explored by counsel, and the Appellate Division's rejection of this argument was not contrary to or an unreasonable application of clearly established Supreme Court precedent. *Premo*, 131 S. Ct. at 739; *Strickland*, 466 U.S. at 694.

In sum, based on the record, there is no evidence that counsel's performance was adversely affected because of the difficulties that led to his request, months before trial, to be

27

relieved. *Morris,* 461 U.S. at 13-14; *see John Doe #1,* 272 F.3d at 123 ("we believe that the district court acted within its discretion in denying the motions to substitute counsel, despite the evidence contained in the record that Findley and Stapleton were mired in a difficult attorney-client relationship and disagreed as to what was in Findley's best interests."); *see Simeonov*, 252 F.3d at 242 (finding that despite a dispute between counsel and defendant, "the notion that [counsel] was unable to provide an adequate defense for his client is belied by the record."); *Simms,* 769 F. Supp. 2d at 125-26 ("Although there was a breakdown in communication between Simms and assigned counsel, that is insufficient to create an 'actual conflict of interest' where the tension was created solely by Simms' unreasonable and unjustified hostility towards his assigned attorney." ); *Shakur v. Portuondo*, No. 1:98-CV-3462, 1999 WL 759993 at *5 (S.D.N.Y. Sept. 27, 1999) (the mere fact of a dispute between counsel and petitioner resulting in counsel's motion to be relieved "is insufficient to support an ineffective assistance of counsel claim.").  The Appellate Division's decision was not, therefore, contrary to or an unreasonable application of clearly established Supreme Court precedent.  Ground Four of the petition is denied and dismissed.

### F. Claim that petitioner was improperly adjudicated a persistent felony offender

Petitioner claims in Ground Five of his petition that the trial court improperly sentenced him, as a persistent felony offender, to serve fifteen years to life in prison.  Pet. at Ground Five.  He argues, as he did on direct appeal, that the trial court abused its discretion because his "history and character" and the "nature and circumstances of his criminal conduct" did not warrant adjudicating him a persistent felony offender.  *See* Pet. at Ground Five; Traverse at 2; Dkt. No. 12-5, Exhibit B at 58-61.  The Appellate Division concluded petitioner's claim was

without merit.  *Gilbo*, 52 A.D.3d at 955.

Respondent argues that this claim is unexhausted because it was not fairly presented to the state courts in federal constitutional terms.  Dkt. No. 10, R. Mem. at 15-17, 40.  This court agrees.  An application for a writ of habeas corpus may not be granted until a prisoner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254 (b)(1)(A), (B)(I), (ii).  To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively.  Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition.  Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam)).  "To establish that a federal claim was raised in state court, a petitioner must, in the state courts, (1) have relied on federal case law employing federal constitutional analysis; (2) relied on factually similar state cases employing federal constitutional analysis; (3) asserted the claim 'in terms so particular as to call to mind a specific right protected by the Constitution'; or (4) alleged a set of facts well within ordinary constitutional litigation." *Stone v. Stinson*, 121 F. Supp. 2d 226, 236 (W.D.N.Y. 2000) (citation omitted).

Petitioner argued on direct appeal that, pursuant to CPL § 400.20, the trial court had to find both that he previously committed two or more felonies and that his "history and character" and the nature of his criminal conduct required "extended incarceration and

29

lifetime supervision." Dkt. No. 12-5, Appellate Brief at 59 (citations omitted). He claimed that

the trial court's finding that he was a persistent felony offender was an abuse of discretion

based upon the evidence presented at the hearing. Dkt. No. 12-5, Exhibit B at 58-62. He did

not, however, present this claim in federal constitutional terms, leaving it unexhausted. *Id.;

see e.g. Simpson v. Poole,* No. 1:07-CV-0651, 2011 WL 1560963 at *9 (W.D.N.Y. Mar. 29,

2011) ("petitioner challenged his sentence on appeal solely as a violation of CPL § 400.21(2).

By failing to raise this claim in federal constitutional terms, it is rendered unexhausted."),

*adopted* 2011 WL 1560982 (W.D.N.Y. Apr. 25, 2011); *Wallace v. Artus*, No. 1:05-CV-0567,

2006 WL 738154 at *3 (S.D.N.Y. Mar. 23, 2006) (claim unexhausted where "the petitioner

apprised the state courts of his concern that the trial court had erred in failing to conduct a *de

novo* determination as to whether he fit the definition of a persistent violent felon, but he

complained of a violation of the criminal procedure law of New York and never stated the

claim in federal constitutional terms."); *Mercado v. Conway,* No. 6:04-CV-6609, 2009 WL

2157002 at *6 (W.D.N.Y. Jul. 15, 2009) (petitioner's claims that his "persistent felony offender

sentencing proceeding was deficient because hearsay (an unsigned certificate of conviction)

was admitted" and that he should have received a lesser sentence were unexhausted and

procedurally defaulted because he "failed to present these claims in federal constitutional

terms.").

 Petitioner's unexhausted claim is also procedurally defaulted. He cannot file a direct

appeal to properly present it because he has already had the one appeal to which he is

entitled. *Aparicio,* 269 F.3d at 91 (defendants are "entitled to one (and only one) appeal to

the Appellate Division."). The facts that would support his claim were apparent on the record

(Sent. Tr.), and "New York does not otherwise permit collateral attacks on a conviction when

the defendant unjustifiably failed to raise the issue on direct appeal." *Aparicio*, 269 F.3d at 91 (citing CPL § 440.10 (2)(c)); *see Clark*, 510 F.3d at 390. Petitioner has not alleged or shown cause for his failure to present this claim in federal constitutional terms, and therefore the court need not decide whether he suffered actual prejudice. *Murray,* 477 U.S. at 496. And, as previously noted, petitioner has not presented any new evidence that he is actually innocent. *House*, 547 U.S. at 536-39; *Schlup*, 513 U.S. at 327. Petitioner's claim is therefore unexhausted and procedurally defaulted, and may be dismissed on that ground alone.

Additionally, even if the claim was not procedurally defaulted, no relief would issue because this claim is not cognizable on federal habeas review. As the Second Circuit has found, "[w]hether a New York court erred in applying a New York recidivist sentencing enhancement statute is a question of New York State law, not a question of fact," and the province of a federal habeas court is not to " 'reexamine state-court determinations on state-law questions.'" *Saracina v. Artus*, 452 F. App'x 44, 46 (2d Cir. 2011) (quoting *Estelle*, 502 U.S. at 67–68); *Mercado*, 2009 WL 2157002 at *6.

Finally, it is firmly established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992); *Mayerhofer v. Bennett*, No. 9:02-CV-0074 (LEK/VEB), 2007 WL 1624767 at *7 (N.D.N.Y. June 6, 2007); N.Y. PENAL LAW § 70.10(2).

For the foregoing reasons, Ground Five of the petition is dismissed.

### G. Constitutional challenge to the persistent felony offender hearing

Petitioner argues in Ground Six of his petition, as he did on direct appeal, that New York's persistent felony offender hearing was unconstitutional because the judge, and not a jury, made factual findings that he qualified as a persistent felony offender. Pet. at Ground

Six.

The Appellate Division rejected this claim, finding that it was unpreserved for appellate review. *Gilbo*, 52 A.D.3d at 955. The court declined to review the claim in the interest of justice because it had been "repeatedly rejected" by the court. *Id.* (citations omitted). The court's finding that petitioner's claim was unpreserved constitutes an adequate and independent state court ground precluding federal habeas review of the claim absent a showing of cause for the failure to comply with the preservation rule and resulting prejudice, or that failure to consider the claim would result in a fundamental miscarriage of justice. *See* CPL § 470.05(2); *Calderon*, 523 U.S. at 559; *Schlup*, 513 U.S. at 327; *Harris*, 489 U.S. at 264; *Murray*, 477 U.S. at 488. Petitioner has made not made the required showing, and this claim is therefore procedurally defaulted and dismissed.

Finally, it is worth noting that New York and federal courts have explicitly rejected petitioner's argument that the persistent felony offender statute violates the Constitution. *See Portalatin v. Graham*, 624 F.3d 69, 93-94 (2d Cir. 2010) ("the PFO statute-as interpreted by the New York Court of Appeals-creates a recidivist sentencing scheme in which the only factual predicates necessary to impose the enhanced sentence relate to the defendant's criminal history" and it therefore does not violate clearly established Supreme Court precedent), *cert. denied* 131 S. Ct. 1693 (2011); *People v. Quinones*, 12 N.Y.3d 116, 131 (2009); *People v. Rivera*, 5 N.Y.3d 61, 71 (2005); *People v. Rosen*, 96 N.Y.2d 329, 336 (2001).

For the foregoing reasons, Ground Six of the petition is denied and dismissed.

**IV.    CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that the petition for a writ of habeas corpus, Dkt. No. 1, is **DENIED** in its entirety and **DISMISSED**; and it is

**ORDERED** that no certificate of appealability shall issue in this case because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).[9]

**IT IS SO ORDERED.**

Dated: January 15, 2013

Honorable Norman A. Mordue
U.S. District Judge

---

[9] *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("§ 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right'"); *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation") (emphasis in original) (citation omitted)).